Milas J. Robinson of Mecklenburg, married Nancy, the window of Jno. Polk. By her first marriage she had issue, the plaintiff, John A. Polk, and a daughter, Mary B., who in after life married one Weeks and died. By her second marriage she had issue, Matilda D., Rosinda, and James B. Robinson. In July, 1825, Milas J. Robinson made his will and therein, after directing his debts to be paid out of his crops, money on hand, and debts due him, provided that, if there should still be debts unpaid, his executor might, instead of selling slaves or land, borrow money for their payment, and hire and lease the slaves and land for its payment. By a clause in the will, he gave to his wife Nancy two slaves, named Susanna and Peter, and, including those two, one-fifth part of all his slaves during her life, and, at her death, the whole to be equally divided among her children by John Polk and the testator, and the other four-fifths of the slaves he gave to his own three children, and he appointed Thomas G. Polk his executor. The testator died shortly afterwards, much indebted, and leaving about twenty slaves. The executor, in the latter part of 1825, made sales of the crop and some perishable articles, and also hired out the (236) slaves for 1826, and finding that the estate was much involved, and the administration was likely to be very troublesome, and being about to remove from Mecklenburg to Salisbury, came to an agreement with one James Orr, that the latter should conduct the administration in the name of the executor, and as his agent, and should have, therefor, the commissions that might be allowed the executor; and the executor never took any further part in the administration; but shortly afterwards removed to Salisbury, and after staying there a few years, *Page 168 
removed again, to Mississippi. Orr hired out the slaves from year to year, but, from time to time, he also made sales of some of them, as often as four times, for the purpose of paying the testator's debts. The last of those sales was in 1830, and there remained unsold only the slaves Peter and Susanna, and three young children of the latter. In the meanwhile, the widow, Nancy, had intermarried with John Weeks, and he became the guardian of the testator's three children, who were all infants. In 1832 one of the daughters married the defendant Potts, and Orr rendered the final account of the administration to the County Court, and, by order of the Court, it was audited by two commissioners, one of whom was Benjamin Morrow, recently the guardian of young Potts, who had just come of age. They found the debts and charges of administration to be $10,424.50, and the assets, which had been converted into money, to be $9,789.74, thus leaving a balance unpaid in February, 1833, of $634.76, which Orr claimed the right to raise by the sale of Susanna and her children, then in the possession of Weeks and the defendants, and he proposed to McCulloch and Potts to make the purchase. The defendant Potts declined doing so, upon the ground of his rights in the matter, until he could consult his late guardian, Morrow; and after having done so, and been informed by Mr. Morrow, that the balance claimed by Orr was, in his opinion, justly due, and that it was a fair price for the women and children, McCulloch and Potts agreed to purchase them, provided John Weeks, the (237) stepfather of their wives, and the guardian of James B. Robinson, who was still an infant, approved of the transaction, and would join them in the purchase, on behalf of his ward. Weeks assented to the arrangement, and the purchase was made, as proposed by Orr, and the price paid to him by those three persons equally, and when James B. Robinson came of age, partition of the family of slaves was made between him and the other two defendants. At the time of the purchase, the plaintiff, John A. Polk, was residing with his mother, and just of age; and the mother lived until 1848. Soon after her death, this bill was filed against McCulloch, Potts and Robinson, and also the administrator of Mary B. Weeks, the plaintiff's sister, and alleges, that the executor assented to the legacy to the mother for life, and that thereby the legal title vested in her and those in remainder; so that upon her death, the slave Peter, and also Susanna, and her said three children, and others since born, vested in the plaintiff and the four defendants, as tenants in common in possession. The prayer is for partition. The answers deny the assent of the executor to the legacy, and set forth the facts above stated; and insist upon the good faith of the purchase from Orr, the agent of the executor, and *Page 169 
on the validity of the title under it. The defendants admit, that the slave Peter is held in common, and ought to be sold for division.
The proofs satisfy the Court that the plaintiff is mistaken in the allegation of the executor's assent to the legacy, as respects the woman Susanna and her children. The executor seems to have had little or nothing to do with the estate, and hardly any knowledge of the administration, which was conducted by Orr, (238) as his general agent for that purpose. It is clear, that Orr never gave up his hold on the slaves until by the defendant's purchase the debts and charges were satisfied. There is no reason to doubt the fairness of the balance claimed by him, and the fairness of the defendant's purchase. The late guardian of the defendant, Potts, settled the administration account, and advised the young man, that he had better purchase; and Mr. Weeks, who married the mother, and was, in her right, entitled to the slaves for life, if not needed for the payment of debts, readily gave up all claim, and on behalf of one of the children, for whom he was guardian, united with the two, who were of age, in making the purchase. An executor has the legal title and the authority in law to sell slaves and other chattels of his testator, and, unless a purchaser knows that the sale is not made for the purpose of the estate, but mala fide, for the purposes of a devastavit, he gets a good title as well in this Court as at law, as there has been occasion to say in Wilson v. Doster, ante, 231. But in this case there is not only nothing to impeach the purchase by the defendants, but they have supported it by affirmative proof of the necessity for the sale, its openness and fairness, and the adequacy of the price. The plaintiff is, therefore, not entitled to relief, as to any of the slaves, except Peter: and he must pay the cost up to this time; and as to Peter, there must be the usual decree for a sale for the purpose of partition, and a declaration that the plaintiff is entitled to one-fifth of the proceeds of the sale and also of his hire and profits since the death of the tenant for life.
PER CURIAM. Decree accordingly.
Cited: Liles v. Rogers, 113 N.C. 202. *Page 170 
(239)